IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT PIPER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   C.A. No. 05-341-SLR |
| | ) |
| RICK KEARNEY, DAVID JACOBS | ) |
| and D.O.C., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS/SUMMARY JUDGMENT PURSUANT TO RULE 12 (b)(1) and 12(b)(6) OF THE FEDERAL <u>RULES OF CIVIL PROCEDURE</u>**

**I.     Introduction**

At their most specific, Robert Piper's ("Plaintiff" or "Piper") allegations in this case involve his claim that Defendants violated the Eighth Amendment by using cap-stun on him, and then allegedly allowing some of his personal property to be stolen.

Defendants refer to matters outside the pleadings, therefore the Court may treat its motion to dismiss as one for summary judgment. *See* Fed. R. Civ. P. 12(b)(6); *Camp v. Brennan*, 219 F.3d 279, 280 (3rd. Cir. 2000) (consideration of matters beyond the complaint converts a motion to dismiss into a motion for summary judgment). Defendants Rick Kearney, David Jacobs and the Department of Correction ("DOC"), contend that they are entitled to judgment as a matter of law because there are no genuine issues of material fact in dispute. *See Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (once the moving party has carried its initial burden, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'"). Defendants assert that Plaintiff has not made, and cannot make a

sufficient showing of the essential elements of his case for which he carries the burden of proof. Therefore, dismissal is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In addition, Defendants state, unless there is sufficient evidence to enable a jury reasonably to find for the nonmoving party on the factual issue, summary judgment should be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## II.     Statement of Facts

This lawsuit has it genesis in the chow hall at the Sussex Correctional Center ("SCI"), in the late afternoon of March 3, 2005. Inmates going through the chow line are expected to keep moving and fill up each table in succession before anyone sits at an empty table. (*See* Inmate Rules: Sussex Correctional Institution attached as Exhibit "A"). Inmates are not to stop at any full tables, or pass food back and forth between tables. (Ex. A).

Plaintiff was taking his dinner tray to a table when he stopped and leaned over a table that had no free seats, a violation of the housing rules which are prominently posted on a notice board by the serving line. (*See* Affidavit of David Jacobs, attached as Exhibit "B"). Seeing this, Officer Jacobs told Plaintiff twice to put down his tray and return to his cell. (*See* Incident Report No. 9711 attached as Exhibit "C"). Plaintiff stopped, turned and looked at Officer Jacobs, and then started quickly walking away, while stuffing food in his mouth. (Ex. B, ¶ 8). When Officer Jacobs told Plaintiff a second time to stop and put his tray down, Plaintiff picked up his speed, continuing to walk away and eat. (Ex. B, ¶ 9). At that point the other inmates started getting up from their tables and moving away. (Ex B, ¶ 11). Officer Jacobs continued after Plaintiff who kept walking away at an ever faster rate. When he was able to get within four feet of Plaintiff, he attempted to spray him with cap-stun. (Ex. B, ¶ 12). Being alone with a disorderly inmate, and surrounded by a large number of other inmates who were milling around

the area, Officer Jacobs called a Code 11, which summons help from other officers. (Ex. B, ¶ 13). Plaintiff was now running around the chow hall area, and Officer Jacobs got close enough to Plaintiff and attempted to cap-stun him twice more without success. (Ex. B, ¶ 14). When the other officers arrived, Plaintiff was subdued, handcuffed and removed from the housing unit. (Ex. B, ¶ 15). Plaintiff does not allege any injuries. (See Complaint and Grievance Form dated March 3, 2005, attached as Exhibit "D").

In his grievance filed the same day, Plaintiff claims that he was sitting down when approached by the officer, and when told to go to his cell he started to, and asked to see the lieutenant. (Ex. D). Plaintiff alleges that it was at this point that Officer Jacobs "repeatedly sprays me." (Ex. D).

At a disciplinary hearing held two days later, Plaintiff pleaded guilty to the offenses. (*See* Disciplinary Hearing Decision, attached as Exhibit "E").

When Plaintiff was moved from his cell to another housing unit that day, he alleges that the housing unit officer did not secure his property, which was then stolen by another inmate. (*See* Grievance Form, attached as Exhibit "F"). Plaintiff claims that the other inmate stole eight envelopes and two boxes of vitamin C drops with a total value of $32.00, according to his statement of facts in his Complaint. However, the commissary price list shows that Halls Cough Drops are $0.61 per box. The envelopes cost $0.66 each. Eight envelopes cost $5.28. (*See* Commissary list attached as Exhibit "G"). Two boxes of cough drops and the envelopes come to $6.50. (Ex. G).

**ARGUMENT**

I.  **DEFENDANTS DID NOT VIOLATE PLAINTIFF'S EIGHTH AMENDEMENT RIGHT.**

It appears that Plaintiff is attempting to state a claim for excessive force under the Eighth Amendment. However, Plaintiff's allegations that "I had my rights violated and became assaulted…by being repeatedly cap-stunned" do not state a claim for an Eighth Amendment violation. (*See* Complaint, Statement of Claim).

There are two seminal United States Supreme Court decisions addressing the use of force in prisons: *Hudson v. McMillian*, 503 U.S. 1 (1992); and *Whitley v. Albers*, 475 U.S. 312 (1986). Where prison officials use force to address a prison disturbance, the question of whether the force used inflicted unnecessary and wanton infliction of pain turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-321. Not every "malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. The Eighth Amendment's prohibition against cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Whitley*, 475 U.S. at 327.

The Supreme Court has instructed that prison officials facing decisions regarding the use of force often must make decisions quickly and their judgment should be given deference in these situations. "[O]fficials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force." *Hudson*, 503 U.S at 6. While weighing these competing concerns, officials must make decisions as to the use of force "in haste, under pressure, and frequently without the luxury of a second chance." *Whitley*, 475 U.S. at 320. Prison officials must be

4

"accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

  **A.**  **Defendants did not use excessive force against Plaintiff.**

In an excessive force case, as part of the inquiry into "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm" the Court must consider: 1) the need for the application of force; 2) the relationship between the need and the amount of force that was used; 3) the extent of the injury inflicted; 4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and 5) any efforts made to temper the severity of the forceful response. *Whitley*, 475 U.S. at 321. The extent of the threat to the safety of the staff and inmates, as perceived by reasonable officials on the basis of facts known to them, must be considered in assessing the use of force. *Hudson*, 503 U.S. at 7.

The use of *de minimis* force does not constitute cruel and unusual punishment within the meaning of the Eighth Amendment. *Whitley*, 475 U.S. at 327. "There exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically." *Reyes v. Chinnici*, 54 Fed. Appx. 44, 48 (3d Cir. 2002).

This Court has previously addressed inmate excessive force claims in the context of the use of cap-stun or mace.

In *Johnson v. Berezansky*, 2005 WL 1026723, at *1 (D. Del. April 28, 2005) (attached hereto as Exhibit "H"), plaintiff inmate became involved in a dispute with defendant correctional officer in the chow hall, was forced to throw away his food tray and return to his cell. After he

was locked into his cell, the plaintiff began to bang on the door and complained about missing his meal. Defendant repeatedly told plaintiff to stop calling out and banging, but plaintiff refused to comply with this request. Defendant then opened plaintiff's cell to speak with him. There was a factual dispute as to whether plaintiff then made a threatening movement towards defendant. It was undisputed that, after opening the cell, defendant sprayed plaintiff with cap-stun. *Id.*

The court concluded that plaintiff's disorderly conduct was sufficient to create a need for defendant to use force to quell plaintiff's behavior. *Id.* at *3. In reaching this conclusion, the court noted that spraying plaintiff with cap-stun was in proportion to the need to stop him from causing a disturbance in the facility. *Id.* at *4. The court also observed that defendant was in the best position to perceive whether plaintiff posed a threat to the safety and security of the staff and inmates. *Id.*

In *Wright v. Snyder*, 2002 WL 1821583, at *1 (D. Del. July 8, 2002) (attached hereto as Exhibit "I"), defendant correctional officers were conducting strip searches of inmates for drugs, weapons and contraband. Plaintiff claimed that he complied with directions but made a sarcastic comment to defendants. Defendants claimed that plaintiff stated that he would not comply and moved towards them in a threatening manner, at which time he was sprayed once with cap-stun. Shortly thereafter, plaintiff was treated by a nurse. The medical notes indicated that "no other trauma was seen . . . denies other injuries." *Id.*

The court found that plaintiff's actions demonstrated that he did not obey defendants' orders to permit a body cavity search for contraband. *Id.* at *3. Defendants' claim that plaintiff lunged towards them stated a reasonably perceived threat justifying use of force. The amount of force used, pepper spray, was reasonably related to the need for force because defendants

believed that plaintiff was moving in a threatening manner, and the purpose of the pepper spray was to subdue unruly subjects. The court granted defendants' motion for summary judgment. *Id.* at *4.

In *Wilson v. Reinhart*, 2003 WL 21756393 (D. Del. July 29, 2003) (attached hereto as Exhibit "J"), defendant correctional officer became involved in a dispute with plaintiff in the chow hall. *Id.* at *1. Plaintiff then returned to his cell. Plaintiff alleged that, shortly thereafter, defendant came to his cell and attempted to instigate a physical confrontation, and when he did not respond, she sprayed mace into his face and locked him into his cell. *Id.*

Defendant officer claimed that when plaintiff returned to his cell, he was yelling and kicking his cell door. Defendant asked plaintiff's cellmate to try to calm plaintiff and also asked plaintiff if he would like to talk to a counselor. In response, plaintiff moved towards defendant in a hostile manner, at which time she sprayed him and called for backup. *Id.*

The court found that because plaintiff admitted that he may have been disorderly in interacting with defendant in the chow hall, there was a need for the use of force. *Id.* at *4. "Although it is disputed whether or not plaintiff threatened [defendant], plaintiff's disorderly conduct was sufficient to create a need for [defendant] to use force to alleviate the situation." *Id.*

Because the force used was minor, there was a correlation between the need for force and the force actually used. "Spraying plaintiff with mace was in proportion to the need to stop plaintiff from causing a disturbance in the prison. Even if, as plaintiff claims, he did not threaten [defendant] and only acted disorderly, her response was reasonable under the circumstances." *Id.* Defendant used only sufficient force to gain control of the situation and call for backup.

Finally, the court observed that great deference is given to prisons in adopting and implementing policies designed to maintain order, discipline and security. *Id.* "[Defendant] was

in the best position to perceive any threat to her safety or the security of the prison by plaintiff's behavior." *Id.* The court held that, in the absence of evidence that defendant acted maliciously or sadistically, plaintiff failed to state a claim. *Id.*

Like the officers in *Johnson* and *Wilson*, Officer Jacobs was faced with an inmate who was disobeying orders and engaging in disorderly conduct. Unlike the plaintiffs in *Johnson* and *Wilson*, Piper was not already locked in a cell, he was running away from the officer. Plaintiff's disruptive conduct created the need for Officer Jacobs to use force to quell Plaintiff's behavior. As the Court held in *Wilson* and *Johnson*, the use of cap-stun was reasonable in cases where the inmate was disobeying orders while in a confined area. Unlike those cases, Officer Jacobs was by himself, attempting to control a chow hall full of inmates, facing an inmate who not only was disobeying orders and engaging in disorderly conduct, but who was also running away from the officer in a large, open area. Under the circumstances Officer Jacobs faced, his use of cap-stun was in proportion to the need to prevent further disorderly conduct. Officer Jacobs, the sole officer in the chow hall was in the best position to determine whether Plaintiff posed a threat to the safety and security of the staff and inmates.

In this case, under the *Whitley v. Albers* factors, Officer Jacobs used force in a good-faith effort to prevent Plaintiff from creating more disruption, and not maliciously and sadistically to cause harm. Force was needed because Plaintiff twice refused to obey orders, and ran from the officer. Officer Jacobs by twice warning Plaintiff was trying to stop Plaintiff's conduct without having to resort to any force. Whenever an inmate disobeys orders and becomes disorderly while with a group of other inmates, there is always the concern that the other inmates will take advantage of the situation and also act out, causing an escalation of disorder and chaos. This increases the security risk for everyone in the area. This is the situation Officer Jacobs faced in

the chow hall.  His use of *de minimus* force to stop Plaintiff was reasonably related to the need to control the situation Plaintiff created when he disobeyed the officer's orders.  Plaintiff alleged no injuries in either his Complaint or the grievance he wrote on March 3, 2005.  (Ex. D).

      **B.**      **There is no evidence of personal involvement by defendant Kearney.**

In actions brought pursuant to 42 *U.S.C.* § 1983, an individual cannot be held liable in the absence of personal involvement or knowing acquiescence of the alleged deprivation.  *Pennsylvania v. Porter*, 659 F.2d 306, 336 (3d Cir. 1981), *cert. denied,* 458 U.S. 1121 (1982).  "[T]he officials' misconduct cannot be merely a failure to act.  Such officials must have played an affirmative role in the deprivation of the plaintiffs' rights, i.e., there must be a causal link between the actions of the responsible officials named and the challenged misconduct."  *Id.*  Without identifying how he participated in, personally directed, or acquiesced in the events which plaintiff claims deprived him of constitutional rights, defendant Kearney cannot be held liable and dismissal is appropriate.  *Gay v. Petsock*, 917 F.2d 768, 771 (3d Cir. 1990); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  To show "deliberate indifference," a plaintiff must demonstrate a sufficiently culpable state of mind on the part of the defendant.  *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

In this case, Plaintiff appears to allege that Officer Jacobs used excessive force in spraying him with cap-stun.  Plaintiff does not allege that Warden Kearney was present, directed Officer Jacobs to act, sprayed Plaintiff himself, or used excessive force against him in any way.  Thus, there is no evidence of use of force by Defendant Kearney.  Further, there is no evidence of personal involvement by Warden Kearney in the incident.  In the absence of any evidence of personal involvement, Warden Kearney is entitled to summary judgment on Plaintiff's excessive force claim.

II. **PLAINTIFF'S ALLEGATIONS OF LOST PERSONAL PROPERTY DO NOT STATE A CONSTITUTIONAL CLAIM UNDER SECTION 1983.**

When Plaintiff was moved to the behavior modification housing unit, he alleges that correction officers failed to protect his personal property. Plaintiff claims that as a result, two boxes of cough drops and eight envelopes were stolen. Plaintiff's allegations do not create a constitutional claim under Section 1983. *Nicholson v. Carroll*, 390 F. Supp 2nd 429, 435(D. Del. 2005). Like the plaintiff in *Nicholson*, Piper claims property was taken when he was moved to a different housing unit. The Court held that the plaintiff could not state a due process claim under Section 183 for the loss of his property. The Court further held that a claim for lost property can be pursued in State court. *Id.*

Assuming *arguendo* that Plaintiff could bring such a claim, he may be able to prove he bought the items, but not that he had them at the time he was moved to another housing unit. It is possible that he gave or bartered the items away. Finally, Plaintiff's claim that the items totaled $32.00 is without merit. The commissary price list indicates that the cough drops cost $0.61 per box and the envelopes cost $0.66 each. The total cost of two boxes of Halls cough drops and eight envelopes is $6.56, not $32.00. (Exhibit G).

III. **THE ELEVENTH AMENDMENT IMMUNIZES DEFENDANTS FROM SUIT IN THEIR OFFICIAL CAPACITIES.**

The Plaintiff's complaint arguably names the Defendants in their official capacities. The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." While the Amendment does not facially bar suits against the State by its citizens, the United States Supreme Court has held that in the absence of consent, a state is "immune from suits

brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

The Eleventh Amendment stands "for the constitutional principle that State sovereign immunity limit[s] the federal courts' jurisdiction under Article III." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996). "The Eleventh Amendment limits federal judicial power to entertain lawsuits against a State and, in the absence of congressional abrogation or consent, a suit against a state agency is proscribed." *Neeley v. Samis*, 183 F. Supp. 2d 672, 678 (D. Del. 2002) (*quoting Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98-100 (1984)). The United States Congress can abrogate a state's sovereign immunity, and therefore, its Eleventh Amendment immunity through the Fourteenth Amendment; however, only a clear indication of Congress' intent to waive the states' immunity will produce this result. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996). No such clear intent can be seen in 42 *U.S.C.* §1983. In fact, a review of the statute demonstrates that Congress did not intend to waive the states' immunity. The statute facially allows suits only to be brought against "persons." 42 *U.S.C.* §1983. Neither the State of Delaware, nor agencies or officials of the State of Delaware are "persons" as contemplated by 42 *U.S.C.* § 1983. As an entity of the State, the Department of Correction is not a "person" and thus is immune from lawsuits under 42 U.S.C. § 1983.

A suit against state officials in their official capacities is treated as a suit against the State. *Hafer v. Melo*, 502 U.S. 21 (1991). Under federal law, the Defendants in their official capacities are not "persons" for the purposes of 42 *U.S.C.* § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Consequently, given this categorization, this Court lacks jurisdiction over the Defendants in their official capacities, and Defendants are outside the class of persons subject to liability under 42 *U.S.C.* § 1983. Accordingly, any "official capacity" claims against

Defendants should be dismissed based on the Eleventh Amendment to the United States Constitution.

## IV.   DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

The doctrine of qualified immunity protects government officials from civil liability insofar as their conduct "does not violate clearly established statutory or Constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects officials from the personal cost of litigation and the attendant inhibiting effect litigation has on the proper discharge of their official responsibilities. *Lee v. Mihalich*, 847 F.2d 66, 69 (3d Cir. 1988).

The Supreme Court has announced unequivocally that the District Court, at the earliest possible stage of litigation, must consider the defense of qualified immunity under a legal standard separate and apart from its analysis of the underlying claim itself. These two analyses are not susceptible to fusion, and cannot be left for factual resolution by the trier of fact. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The first question before the Court in a qualified immunity analysis is whether, taken in the light most favorable to the party asserting injury, the facts show that the prison officials' conduct violated a constitutional right. *Brosseau v. Haugen, 125 S.Ct. 596, 598 (2004)(citing Saucier v. Katz*, 533 U.S. 194, 201 (2001)). For the reasons set forth above, Plaintiff has failed to provide any evidentiary support to any of his alleged constitutional violations. In addition, Plaintiff's claims also suffer from several legal defects as set forth above. Thus, Plaintiff fails to make out a constitutional violation.

The next stage of the qualified immunity analysis requires the Court to ask whether the constitutional right allegedly violated was clearly established. *Saucier*, 533 U.S. at 201. "The

relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable prison official that his conduct was unlawful in the situation he confronted." *Id* at 202. The "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The Court must ask whether a reasonable public official would know his or her *specific conduct* violated clearly established rights. *Grant v. City of Pittsburgh*, 98 F.3d 116, 121 (3d Cir. 1996). "The 'salient question' is whether the state of the law at the time of the challenged conduct gave defendants 'fair warning' that their action was unconstitutional. *Black Hawk v. Pennsylvania*, 225 F.Supp.2d 465, 480 (M.D. Pa. 2002)(*quoting Hope v. Pelzer*, 536 U.S. 730,741 (2002)(articulating the "clearly established" inquiry to require that an official have 'fair warning' that the alleged activity engaged in was unconstitutional)).

Plaintiff's claims are based on heretofore unrecognized legal rights based on chimerical guarantee of protection. Nothing in his Complaint or records supports a finding that any of the defendants ever engaged in any conduct which violated Plaintiff's rights. Additionally, Plaintiff's vague statements in his Complaint fail to allege how any Defendant's *specific conduct* violated his clearly established rights. Assuming *arguendo* Plaintiff's ability to support any violation of any constitutional right, there is no legal authority which would provide Defendants with "fair warning" that their alleged activities were unconstitutional. Accordingly, Defendants are entitled to the defense of qualified immunity and summary judgment in their favor.

**CONCLUSION**

Based on the above-stated legal arguments, Defendants respectfully request that this Honorable Court grant their Motion to Dismiss Plaintiff's action against them with prejudice.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/ Lisa Barchi
Deputy Attorney General
Department of Justice
820 N. French Street, 6th floor
Wilmington, DE 19801
(302) 577-8400
lisa.barchi@state.de.us

Date: March 2, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on March 2, 2006 I electronically filed *Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss/Summary Judgment* with the Clerk of Court using CM/ECF. I hereby certify that on March 2, 2006 I have mailed by United States Postal Service, the document to the following non-registered participant:

Robert Piper
SBI #170365
Sussex Correctional Institution
P.O. Box 500
Georgetown, DE 19947

                                         STATE OF DELAWARE
                                         DEPARTMENT OF JUSTICE

                                         /s/ Lisa Barchi
                                         Lisa Barchi
                                         Deputy Attorney General
                                         Department of Justice
                                         820 N. French Street, 6th Floor
                                         Wilmington, DE 19801
                                         (302) 577-8400
                                         lisa.barchi@state.de.us