IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT PIPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-341-SLR |
| | ) | |
| RICK KEARNEY, DAVID JACOBS | ) | |
| And D.O.C., | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF DAVID JACOBS

I, David Jacobs, having been duly sworn according to the law, do hereby depose and state the following:

1. I am employed by the State of Delaware, Department of Correction at the Sussex Correctional Institution in Georgetown, Delaware as a Correction Officer. I have been employed by the Department of Correction for nine years. Previously, I worked in the Department of Corrections in New Jersey. My duties include providing security in the inmate housing units at Sussex Correctional Institution. I have held this position since June, 1996.

2. In response to a request from the State of Delaware Department of Justice, I am providing the following information regarding inmate Robert Piper and his allegations of being sprayed with Cap-stun.

3. On March 3, 2005, I was the sole Corrections Officer on Inmate Piper's hosing unit when dinner was being served. There are sixty four inmates on the unit. They line up sixteen at a time to go through the serving line in the housing unit's chow hall.

4. Rules regarding conduct in the housing unit's chow hall are prominently posted on a notice board by the serving line. Each inmate who is housed in the unit is instructed to read and

follow the rules.

5. The inmates who go through the serving line are to walk single file and fill each table before anyone sits at the next table. (*See* Chow Hall Rules, attached as Exhibit "A").

6. Inmates are not to stop at any table along the way to their seat, and they are forbidden to pass or take food from anyone at another table. These rules are aimed at keeping the line moving and preventing bartering of food.

7. On March 3, 2005, Inmate Piper came through the serving line and started down the aisle to a table. Although his back was to me, I could clearly see that he stopped and leaned over a table which was already full. I yelled to him, "Yo, stop and put the tray down. You know you are not supposed to stop at a table."

8. Inmate Piper knew that I was speaking to him because he stopped, looked at me, and then started walking fast, at the same time stuffing bread and other food in his mouth.

9. While he was doing this, I started after him, and again told him to stop, put the tray down and lock in, which means he is to return to his cell.

10. Inmate Piper kept walking away from me, going even faster, and he was still stuffing food in his mouth.

11. At this time the other inmates were starting to move around and get up from their tables.

12. When I was able to get within three to four feet of Inmate Piper, I attempted to spray him with Cap-stun, but as I sprayed, he moved out of the range of the spray, with his back to me.

13. I called a Code 11, which brings other Correction Officers to help with a disturbance. I also continued to pursue Inmate Piper who was running all over the dayroom and chow hall areas.

14. I also attempted to Cap-stun Inmate Piper twice more, but each time, as I got close enough to spray, he was able to move out of the range of the spray.

15. When other Correction Officers arrived, one of them was able to catch Inmate Piper as he

was running to his cell. He was handcuffed and removed from the housing unit.

16. When Inmate Piper was removed from the area, the chow hall was cleared and the fan turned on to help remove any remaining Cap-stun mist from the area.

17. To my knowledge, each of the three times I attempted to Cap-stun Inmate Piper, I was unable to get any spray near his face.

18. Inmate Piper was transferred to HU-4. His personal property was packed up and moved to property. When an inmate is removed from his current cell to another unit, Correction Officers will pack up his personal property around his bed, and ask his cellmate if there is a question about ownership of any property. It is impossible for the Corrections Officer to know every item each inmate owns. The Corrections Officer can only be sure about the items that are either labeled with the inmate's name, or are under or around his bed.

19. Commissary comes on Wednesday mornings. In this case, the commissary day would have been the previous day, March 2, 2005, the day before Inmate Piper was moved to HU-4. If Inmate Piper bought cough drops and envelopes, there is no way to know if they were still in his cell on Thursday, March 3, 2005. Although he may have purchased those items on March 2, 2005, or at some time in the past, there is no way to know if he had already used them, or bartered or gave them away by March 3, 2005.

20. I have made these statements based upon my personal knowledge, specialized training, and experience as an employee of the Department of Correction.

David Jacobs

SWORN TO AND SUBSCRIBED BEFORE ME THIS 15th DAY OF February 2006.

_Judith Ann Lederman_
NOTARY

JUDITH ANN LEDERMAN
NOTARY PUBLIC, STATE OF DELAWARE
My Commission Expires August 19, 2007