Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 21756393 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Larry F. WILSON, Plaintiff,
v.
Kimberly REINHART, Rick Kearney, Warden
Defendants.
**No. Civ.A. 02-1551-SLR.**

July 29, 2003.

Larry F. Wilson, Georgetown, Delaware, pro se.
Stuart B. Drowos, Wilmington, Delaware, for
Defendants.

MEMORANDUM OPINION

ROBINSON, Chief J.

I. INTRODUCTION

*1 Plaintiff Larry F. Wilson is a Delaware prison
inmate housed at the Sussex Correctional Institution
in Georgetown, Delaware, and has been at all times
relevant to his claim. On October 11, 2001, plaintiff
filed a complaint with leave to proceed *in forma
pauperis* pursuant to 42 U.S.C. § 1983 against
Correctional Officer Kimberly Reinhart ("Reinhart"
) and Warden Rick Kearney ("Kearney"), alleging
Eighth Amendment violations. [FN1] (D.I.2) The
court has jurisdiction over plaintiff's claims
pursuant to 28 U.S.C. § 1331. Plaintiff is seeking
compensatory damages in the amount of three
hundred thousand dollars. (D.I. 2 at 3) Currently
before the court is defendants' motion to dismiss
plaintiff's complaint pursuant to Federal Rule of
Civil Procedure 12(b)(6). (D.I.18) Because the
parties presented matters outside the pleadings, the
court will review the motion to dismiss as a motion
for summary judgment. (D.I.28) For the following
reasons, the court shall grant defendants' motion.

FN1. Plaintiff amended his original
complaint to state a cause of action against
the defendants as individuals, instead of in
their official capacity. (D.I. 8; D.I. 9)

II. BACKGROUND

On October 4, 2001, plaintiff and defendant
Reinhart had a verbal disagreement about "chow
time." (D.I. 2 at 3) The confrontation began when
Reinhart, a correctional officer, informed inmates
they had three minutes to finish their meals. (*Id.*)
The information provided by Reinhart and plaintiff
differ on what transpired after Reinhart informed
the inmates they had three minutes remaining to eat.

According to plaintiff, he, along with a few other
inmates, remained four minutes after meal time
ended because they had just begun their meals. (*Id.*)
Plaintiff claims Reinhart told him she would leave
him "locked in" during the next chow time because
he was late finishing. (*Id.*) Plaintiff states he then
told Reinhart "I am tired of this chow shit with you
guards" and said he had a right to three meals a day.
(*Id.*) Plaintiff claims he then returned to his cell, but
ten to fifteen minutes later Reinhart called plaintiff's
cell-mate, Mark Carter ("Carter"), downstairs.
According to plaintiff, when Carter returned to the
cell he told plaintiff that Reinhart instructed him to
leave the cell when she came upstairs because she
was going to spray plaintiff with mace. (*Id.* at 4)
Plaintiff claims Reinhart then came upstairs to his
cell and began a verbal confrontation, during which
plaintiff contends he apologized for being
disrespectful at the end of chow time. (*Id.*) Plaintiff
claims Reinhart attempted to instigate a physical
confrontation, but plaintiff would not respond, so
Reinhart sprayed mace in plaintiff's face and then
locked him in his cell. [FN2] (*Id.*)

FN2. In his response to defendants' motion
to dismiss, plaintiff attached seven letters
from inmates corroborating various parts

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 21756393 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

of his claims. (D.I. 29 at A-6 to A-12) One of the letters is not attached in its entirety and is not signed or dated. (*Id.* at A-8)

Reinhart's version of the confrontation is substantially different. In her affidavit, Reinhart claims plaintiff stated "I am tired of this chow shit and you fucking officers" immediately after Reinhart informed the inmates only three minutes remained to eat. (D .I. 19 at A-4) Reinhart states when she told the inmates to finish eating, empty their trays, and lock in, plaintiff was the only inmate to remain seated. (*Id.*) According to Reinhart, plaintiff then approached her in a threatening manner, while continuing to yell at her. (*Id.*) Reinhart told plaintiff to lock in and be quiet three times and informed him he would lose five minutes of his next chow time because of the extra five minutes he used that day. (*Id.* at A-5) According to Reinhart, plaintiff then went to his cell, but continued to yell and began kicking the cell door. (*Id.*) Reinhart claims she then called Carter downstairs to ask if he knew of a reason for plaintiff's behavior and asked Carter to try to calm plaintiff down. (*Id.*) When plaintiff would not stop yelling, Reinhart claims she then went to his cell to ask if he would like to speak with a counselor. (*Id.*) In response, plaintiff then moved towards Reinhart in a hostile manner, at which time Reinhart sprayed plaintiff in the face with mace and called for back up. (*Id.*)

*2 Plaintiff and defendant do not differ as to what transpired after plaintiff was sprayed with mace. Back up officers arrived, cuffed plaintiff and took him to the medical unit to be examined. (*Id.* at A-5) The medical report stated plaintiff's respiration rate was even and non-laboring, his vital signs were stable, and that there was no sign of trauma. (*Id.* at A-13)

Plaintiff received a disciplinary report for disorderly and threatening behavior as a result of the confrontation with Reinhart. [FN3] (*Id.* at A-14) At the subsequent disciplinary hearing, plaintiff pled not guilty, stating he "may have become disorderly, but [he] in no way threatened [Reinhart]." (*Id.* at A-16) The hearing officer found plaintiff guilty and sentenced him to 4 days of confinement to quarters,

which was suspended, and ten days probation/sanction suspended. (*Id.* at A-17)

FN3. Plaintiff claims the discipline report was fabricated by Reinhart to cover up her behavior. (D.I. 2 at 5)

An institutional investigation into the confrontation between plaintiff and Reinhart was conducted shortly after the incident. Lieutenant Tony Rementer ("Rementer") investigated the incident at the request of Earl Messick ("Messick"), the institutional investigator for the Sussex Correctional Institution. (*Id.* at A-1) While investigating the incident, Rementer conducted a "shake down" of plaintiff's unit. (*Id.* at A-18) During the search Rementer discovered two letters concerning the confrontation between Reinhart and plaintiff. (*Id.*) One letter written by inmate Michael Morton (" Morton") described the incident, and the second was a response to Morton's letter instructing Morton how to describe the confrontation. (*Id.*) Rementer concluded the response letter to Morton was written by plaintiff in an attempt to coach Morton as a witness. (*Id.*) As a result, a disciplinary report was filed against plaintiff for attempting to influence a witness. (*Id.* at A-20)

According to Messick's affidavit, Morton told Messick that plaintiff had given him, as well as other inmates, letters describing the incident to copy into their own writing. (*Id.* at A-2) Morton also told Messick that the confrontation between plaintiff and Reinhart was plaintiff's fault. (*Id.*) In addition, according to Messick two other inmates told him that plaintiff gave them, as well as several other inmates, guidelines for describing the incident to copy and submit to support plaintiff's claim. [FN4] (*Id.*) According to his affidavit, Messick concluded Reinhart used appropriate force on plaintiff under the circumstances and that plaintiff's allegations were motivated by monetary gain. [FN5] (*Id.* at A-3)

FN4. One of the inmates interviewed by Messick also stated plaintiff "got what he deserved." (D.I. 19 at A-2) The second inmate stated plaintiff threatened him when

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 21756393 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

he did not follow plaintiff's instructions on what to place in his statement. (*Id.* at A-2, A-3)

FN5. There are no affidavits in the record from any of the seven inmates who wrote letters supporting plaintiff's claims stating their letters were false or coerced. Assuming Messick's affidavit is true, four inmates' letters were submitted in support of plaintiff which were never retracted, even to Messick.

### III. STANDARD OF REVIEW

The parties have referred to matters outside the pleadings. Therefore, defendants' motion to dismiss shall be treated as a motion for summary judgment. *See* Fed.R.Civ.P. 12(b)(6). A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Where the plaintiff is a pro se litigant, the court has an obligation to construe the complaint liberally. *See Haines v. Kerner,* 404 U.S. 519, 520-521 (1972); *Gibbs v. Roman,* 116 F.3d 83, 86 n.6 (3d Cir.1997); *Urrutia v. Harrisburg County Police Dep't.,* 91 F .3d 451, 456 (3d Cir.1996).

\*3 The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are ' genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.,* 57 F.3d 300, 302 n.1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with ' specific facts showing that there is a genuine issue for trial." ' *Matsushita,* 475 U.S. at 587 (quoting Fed.R.Civ.P. 56(e)).

The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

### IV. DISCUSSION [FN6]

FN6. Plaintiff's response to defendants' motion to dismiss states "the plaintiff concures [sic] with the state and knowingly and intelligently agrees to withdrawl [sic] ' Rick Kearney' from this civil action complaint." (D.I. 29 at 5) Even if plaintiff had not withdrawn his complaint against Kearney, plaintiff would not have a cause of action against him because Kearney was not personally involved with the confrontation which gives rise to this suit. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988). The court, therefore, will grant defendants' motion to dismiss as to defendant Kearney.

#### A. Plaintiff's Eighth Amendment Claim

In cases where inmates challenge the use of force by prison officials as excessive, the Eighth Amendment is their key source of protection. *See Whitley v. Albers,* 475 U.S. 312, 327 (1986). The pivotal inquiry in claims of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 7 (1992); *see also Whitley,* 475 U.S. 312. The court must consider: 1) the need for the application of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 4

Not Reported in F.Supp.2d, 2003 WL 21756393 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

force; 2) the relationship between the need and the amount of force that was used; 3) the extent of injury inflicted; 4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and 5) any efforts made to temper the severity of a forceful response. *See Whitley,* 475 U.S. at 321 (citations omitted). Reinhart cannot prevail on a motion for summary judgment if "it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain." *Id.* at 322; *see also Sampley v. Ruettgers,* 704 F.2d 491, 495 (10th Cir.1983) (finding wantonness when prison guard intended to harm inmate).

A plaintiff can only recover on a § 1983 claim if he can show "intentional conduct by one acting under color of state law which subjected him to the deprivation of a federally secured right." *Davidson v. Dixon,* 386 F.Supp. 482, 487 (D.Del.1974), *aff'd,* 529 F.2d 511 (3d Cir.1975). The Eighth Amendment's proscription against cruel and unusual punishment excludes from constitutional recognition de minimis uses of physical force if the use of force is not of a sort "repugnant to the conscience of mankind." *See Whitley,* 475 U.S. at 327. Thus, a plaintiff must establish that the force was maliciously applied to cause harm. *Id.*

*\*4* Plaintiff does not have to demonstrate serious injury, although the extent of injuries suffered is a factor in determining whether the use of force was necessary or not. *Hudson,* 503 U.S. 1, 7 (1992); *see also Brooks v. Kyler,* 204 F.3d 102, 104 (3d Cir.2000) (holding that there is no fixed minimum quantum of injury that a prisoner must prove he suffered through either objective or independent evidence in order to state a claim for excessive force). "Although the extent of an injury provides a means of assessing the legitimacy and scope of the force, the focus always remains on the force used [.] " *Brooks,* 204 F.3d at 108.

Applying the five factors the court must consider under *Whitley,* the court finds that plaintiff has not demonstrated a genuine issue of material fact. *See Whitley,* 475 U.S. at 321. First, plaintiff himself admitted he may have been disorderly, therefore,

there was a need for Reinhart to use force. (D.I. 19 at A-16) Although it is disputed whether or not plaintiff threatened Reinhart, plaintiff's disorderly conduct was sufficient to create a need for Reinhart to use force to alleviate the situation.

Second, since the force used was minor, there is a correlation between the need to use force and the force used. Spraying plaintiff with mace was in proportion to the need to stop plaintiff from causing a disturbance in the prison. Even if, as plaintiff claims, he did not threaten Reinhart and only acted disorderly, her response was reasonable under the circumstances. Reinhart used the mace only once and immediately called for back up to cuff plaintiff and take him to the medical ward. Plaintiff has not presented evidence that Reinhart used a dangerous amount of mace or sprayed plaintiff for a prolonged period of time.

In addition, Reinhart's use of de minimis force is not of the kind "repugnant to the conscience of mankind, " therefore, it does not rise to the level of a constitutional violation. *See Whitley,* 475 U.S. at 327. "There exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically." *Reyes c. Chinnici,* 54 Fed. Appx. 44, 48 (3rd Cir.2002). Further, the Supreme Court has held that not every malevolent touch creates a federal cause of action. *Hudson,* 503 U.S. at 9. De minimis force is excluded from the cruel and unusual punishment clause of the Eighth Amendment unless it is "of a sort repugnant to the conscience of mankind." *Id.* (quoting *Whitley,* 475 U.S. at 327)(internal citations omitted). Again, Reinhart did not use prolonged or severe force to subdue plaintiff. The record indicates Reinhart used only enough force to secure the situation before calling for backup. There is no evidence that the force used was more than de minimis, or of the sort "repugnant to the conscience of mankind." *See id.*

*\*5* Third, although plaintiff does not have to show serious injury to state an Eighth Amendment claim, plaintiff's failure to show more than de minimis injury indicates Reinhart's use of force was reasonable. *See Hudson,* 503 U.S. at 7. Plaintiff has

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                   Page 5

Not Reported in F.Supp.2d, 2003 WL 21756393 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

failed to introduce any evidence to support his claim that he suffered mental and emotional injuries as a result of the incident with Reinhart, therefore, those claims are without merit. As far as plaintiff's physical injuries, plaintiff's medical records show his vital signs were normal after the incident and he showed no signs of trauma after Reinhart used her capstun. (D.I. 19 at A-13) Plaintiff's subsequent medical records give no indication of lasting effects from being sprayed with mace. (D.I. 31 at C-1 to C-5) Plaintiff has not shown any injury other than temporary eye irritation from the mace, therefore, plaintiff's de minimis injury further supports this court's finding that Reinhart's use of force was reasonable.

Fourth, courts give prison officials great deference in setting and executing policies that are, in their opinion, necessary to maintain order, discipline and security. *Hudson,* 503 U.S. at 7. Reinhart was in the best position to perceive any threat to her safety or the security of the prison by plaintiff's behavior. Without evidence that Reinhart acted maliciously or sadistically, plaintiff has failed to state a claim under § 1983.

Finally, the record indicates plaintiff was given ample opportunity to calm down before Reinhart used her mace. Plaintiff and Reinhart's confrontation began during chow time and continued well beyond when plaintiff should have returned to his cell. Reinhart did not respond with force immediately upon plaintiff refusing to complete his meal at the appointed time, therefore, it can be inferred Reinhart waited to use physical force in an attempt to temper the situation.

### V. CONCLUSION

For the reasons stated, defendants' motion for summary judgment is granted. An appropriate order shall issue.

### ORDER

At Wilmington this 29th day of July, 2003, consistent with the memorandum opinion issued this

same day;

IT IS ORDERED that:

1. Defendants' motion to dismiss as to defendant Reinhart (D.I.18) is granted.

2. Defendants' motion to dismiss as to defendant Kearney (D.I.18) is granted.

3. The clerk is directed to enter judgment in favor of defendants and against plaintiff.

D.Del.,2003.
Wilson v. Reinhart
Not Reported in F.Supp.2d, 2003 WL 21756393 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:02CV01551 (Docket) (Oct. 18, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.